IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ELLEN CHALK and PAUL STEWART,      06-CV-158-BR
husband and wife, and ALL
OTHERS SIMILARLY SITUATED,
                                     OPINION AND ORDER

        Plaintiffs,

     v.

T-MOBILE USA, INC., a
Delaware corporation, and
SONY ERICSSON MOBILE
COMMUNICATIONS (USA), INC., a
Delaware corporation,

        Defendants.


MICHAEL R. SEIDL
LISA R. JOHNSTON-PORTER
Seidl Law Office, PC
806 S.W. Broadway, Suite 400
Portland, OR  97205
(503) 224-7840

KAREN E. READ
3 Monroe Parkway, Suite P-215
Lake Oswego, OR  97035
(503) 697-4009

       Attorneys for Plaintiff

1 - OPINION AND ORDER

**NANCY ERFLE**
**CHRISTOPHER C. DOOR**
Schwabe Williamson & Wyatt, P.C.
Pacwest Center
1211 S.W. Fifth Avenue, Suite 1900
Portland, OR  97204
(503) 222-9981

**SCOTT J. FERRELL**
**JOHN C. O'MALLEY**
**WARD J. LOTT**
Call, Jensen & Ferrell
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
(949) 717-3000

        Attorneys for Defendant Sony Ericsson Mobile
        Communications (USA), Inc.

**LOIS O. ROSENBAUM**
**STEVEN KLEIN**
Stoel Rives LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, OR  97204
(503) 294-9293

        Attorneys for Defendant T-Mobile USA, Inc.

**BROWN, Judge.**

        This matter comes before the Court on Defendants' Motion to Dismiss or Stay Action and Compel Arbitration (#5).  For the reasons that follow, the Court **GRANTS** Defendants' Motion.


                        <u>BACKGROUND</u>

        The following facts are taken from the Complaint and Plaintiffs' Response to Defendants' Motion to Dismiss:

        On March 29, 2005, Plaintiff Paul Stewart purchased a GC79

GPRS/Wireless LAN PC Card (GC79) from T-mobile manufactured by
Defendant Sony Ericsson Mobile Communications (USA), Inc. (Sony).
At the time of purchase, Stewart signed a Service Agreement with
T-Mobile.

     Plaintiffs were able to use their GC79 for a wireless
connection to the Internet for approximately three weeks and then
stopped using the GC79 until June 2005.  When Plaintiffs
attempted to use the GC79 in June 2005, the card would not
properly insert into their IBM ThinkPad laptop PC.  Plaintiffs
contacted T-Mobile technical support several times, and T-Mobile
sent Plaintiffs refurbished GC79s on three separate occasions.
None of them, however, would insert into the ThinkPad.  After the
third GC79 would not insert, T-Mobile technical support told
Chalk that she would have to pursue the issue at the T-Mobile
store where she purchased the original GC79.

     At the T-Mobile store, a Sony representative was unable to
get the GC79 to insert into the ThinkPad.  The Sony
representative took information regarding the specifications of
the ThinkPad and stated he would contact Chalk later about a
solution.  Plaintiffs contend, however, they did not hear from
the Sony representative despite numerous email inquiries.

     On December 5, 2005, Plaintiffs' attorney sent a letter to
T-Mobile's Customer Relations stating:

          This firm represents Paul Stewart and Ellen Chalk,
          and others similarly situated, for claims against

3 - OPINION AND ORDER

> T-Mobile and Sony Ericsson for false and
> misleading statements and concealment regarding a
> Sony GC79 aircard.  This letter is a good faith
> request to resolve the claims on behalf of
> [Plaintiffs] and the putative class.

Plaintiffs did not receive a response from T-Mobile.

On February 3, 2006, Plaintiffs filed a Class-Action Complaint[1] in this Court on behalf of themselves and others who acquired a GC79 and contracted with T-Mobile for its mobile internet plan using the GC79.  Plaintiffs bring claims for negligence; unjust enrichment; fraud by concealment; negligent misrepresentation; breach of implied warranties; breach of express warranties; violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310, *et seq.*; violation of the Lanham Act, 15 U.S.C. § 1125(a); and violation of Oregon's Unlawful Trade Practices Act (UTPA), Or. Rev. Stat. § 646.605, *et seq.*

On May 8, 2006, Defendants filed a Motion to Dismiss or Stay Action and Compel Arbitration on the ground that the Service Agreement compels Plaintiffs to arbitrate these claims.

## STANDARDS

### I.  Motion to Dismiss

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider

---

[1] Although Plaintiffs filed this as a class-action complaint, the Court has not yet certified the class.

4 - OPINION AND ORDER

affidavits and other evidence supporting or attacking the complaint's jurisdictional allegations. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). The court may permit discovery to determine whether it has jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). The court has broad discretion in granting discovery and may narrowly define the limits of such discovery. *Id.* If a plaintiff's proof of jurisdictional facts is limited to written materials, it is only necessary for these materials to establish a *prima facie* showing of jurisdiction. *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 942 (9th Cir. 1981)(citing *Data Disc, Inc.*, 557 F.2d at 1284-85).

Plaintiff has the burden to establish that the court has subject-matter jurisdiction. *Ass'n of American Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000).

## II.  Arbitration

The Federal Arbitration Act (FAA) provides arbitration agreements generally "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "[A]rbitration is a matter of contract," and courts must "place arbitration agreements on equal footing with other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002). Accordingly, when grounds "exist at law or in equity for the revocation of any contract," courts may decline

5 - OPINION AND ORDER

to enforce [arbitration] agreements.  9 U.S.C. § 2.  *See also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 683 (1996); *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002).  Arbitration agreements are subject to all defenses to enforcement that apply to contracts generally.  *See* 9 U.S.C. § 2.

To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

## DISCUSSION

Defendants seek to enforce the arbitration clause in the Service Agreement.  Plaintiffs, however, argue the Court should not enforce the arbitration clause because it is part of a contract of adhesion and is unconscionable because it (1) precludes class-action relief, (2) places limits on discovery, and (3) limits Plaintiffs' damages.  In addition, Plaintiffs assert arbitration under the Service Agreement is prohibitively expensive.  Plaintiffs further contend the unconscionable provisions cannot be severed from the arbitration clause, and, therefore, the Court should strike the entire clause from the Service Agreement.

**I.    Service Agreement**

At the time Plaintiffs contracted with T-Mobile for its mobile internet plan using the GC79, the Service Agreement provided in pertinent part:

> BY SIGNING THIS FORM OR BY ACTIVATING OR USING T-MOBILE SERVICE I ACKNOWLEDGE AND AGREE THAT:
> - **THIS IS MY CONTRACT WITH T-MOBILE USA, INC. FOR WIRELESS SERVICES.** . . .  THE T-MOBILE TERMS AND CONDITIONS ARE IN MY WELCOME GUIDE . . . .  BY SIGNING, I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ THIS DOCUMENT, THE T-MOBILE TERMS AND CONDITIONS.
>
> * * *
>
> I UNDERSTAND THAT THE SERVICE AGREEMENT AFFECTS MY AND T-MOBILE'S LEGAL RIGHTS.  AMONG OTHER THINGS, IT:
> - **REQUIRES MANDATORY ARBITRATION OF DISPUTES;**
> - **REQUIRES MANDATORY WAIVER TO THE RIGHT TO JURY TRIAL AND WAIVER OF ANY ABILITY TO PARTICIPATE IN A CLASS ACTION;**

Emphasis in original.  Section One of the Terms and Conditions referenced in the Service Agreement notes:  "**These T&C's . . . require MANDATORY ARBITRATION OF DISPUTES.**"  Section Three of the Terms and Conditions in the Service Agreement provides in pertinent part:

> 3. Mandatory Arbitration; Dispute Resolution.  YOU WILL FIRST NEGOTIATE IN GOOD FAITH WITH US TO SETTLE ANY CLAIM OR DISPUTE BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OR OUR PROVISION TO YOU OF GOODS, SERVICES, OR UNITS ("CLAIM").  YOU MUST SEND A WRITTEN DESCRIPTION OF YOUR CLAIM TO OUR REGISTERED AGENT (See Sec. 22).  IF YOU DO NOT REACH AN AGREEMENT WITH US WITHIN 30 DAYS, INSTEAD OF SUING IN COURT, YOU AGREE THAT ANY CLAIM MUST BE SUBMITTED TO FINAL, BINDING

7 - OPINION AND ORDER

ARBITRATION WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") UNDER ITS PUBLISHED WIRELESS INDUSTRY ARBITRATION RULES, WHICH ARE PART OF THE AGREEMENT BY THIS REFERENCE AND ARE AVAILABLE BY CALLING THE AAA AT 800-778-7879 OR VISITING ITS WEBSITE AT www.adr.org.  You must serve our registered agent (See Sec. 22) with a notice of an arbitration in order to begin an arbitration. This agreement to arbitrate extends to claims that you assert against other parties, including without limit equipment manufacturers and dealers, if you also assert claims against us in the same proceeding.  The Agreement involves interstate commerce and despite the choice of law provision in Sec. 25, the Federal Arbitration Act and federal arbitration law governs arbitrations under the Agreement.

* * *

YOU AND WE ACKNOWLEDGE AND AGREE THAT THIS SEC. 3 WAIVES ANY RIGHT TO A JURY TRIAL OR PARTICIPATION AS A PLAINTIFF OR AS A CLASS MEMBER IN A CLASS ACTION.  IF A COURT OR ARBITRATOR DETERMINES THAT YOUR WAIVER OF YOUR ABILITY TO PURSUE CLASS ACTION OR REPRESENTATIVE CLAIMS IS UNENFORCEABLE, THE ARBITRATION AGREEMENT WILL NOT APPLY AND OUR DISPUTE WILL BE RESOLVED BY A COURT OF APPROPRIATE JURISDICTION.

Finally, a seal affixed to and sealing the GC79 container provided:

**IMPORTANT**

Read the enclosed T-Mobile Terms & Conditions.  By using T-Mobile Service, you agree to be bound by the Terms & Conditions, including the mandatory arbitration and early termination fee provisions.

## II.  Oregon Law Determines Whether the Arbitration Clause Is Enforceable.

Federal courts should apply the law of the forum state to determine whether an arbitration agreement is enforceable.

8 - OPINION AND ORDER

*Ticknor v. Choice Hotels, Inc.*, 265 F.3d 931, 941 (9th Cir. 2001).  *See also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).  To determine the validity of an arbitration agreement under state law, a federal court must "'approximate state law as closely as possible.'"  *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)(quoting *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980)).  The federal court is bound by the pronouncements of the state's highest court.  *Id*.  If the state's highest court has not decided an issue, the federal court must "predict how the state high court would resolve it." *Id*. (internal quotations and citations omitted).  In the absence of controlling state authority, however, the federal court must look to existing state law without predicting potential changes in that law.  *Id*.

The Service Agreement here provides, and the parties do not dispute, that Oregon law applies.

## III. The Arbitration Clause Is Enforceable Under Oregon Law.

Plaintiffs contend the arbitration clause in the Service Agreement should not be enforced because it is unconscionable and part of an adhesion contract.

"[T]he party asserting unconscionability must demonstrate that the clause in question was unconscionable at the time the contract was made." *W.L. May Co., Inc. v. Philco-Ford Corp.*, 273 Or. 701, 707 (1975).

Although the concept of unconscionability first arose in the context of Or. Rev. Stat. § 72.3020, which pertains only to the sale of goods, the Oregon Supreme Court has applied the concept to other types of contracts. *Best v. United States Nat'l Bank of Or.*, 303 Or. 557, 560 (1987)(court analyzed unconscionability of fees that bank charged under its service contract with depositors for processing insufficient-fund checks). Unconscionability is a legal issue to be determined by the court. *Id*. *See also* Or. Rev. Stat. § 72.030. The party who asserts a contract term is unconscionable bears the burden to show the term was "'so onesided as to be unconscionable under the circumstances existing at the time of the making of the contract.'" *W.L. May*, 273 Or. at 707 (1975)(quoting U.C.C. § 2-302, cmt. 1). To determine the unconscionability of a particular contract provision, the court must consider whether invalidation of the provision would prevent "oppression and unfair surprise." *Id*.

A.    **The Arbitration Clause Is Not Unconscionable Even If It Is Part of a Contract of Adhesion.**

Plaintiffs contend the arbitration clause is unconscionable because it is part of a contract of adhesion.

An adhesion contract is an agreement prepared by one party, often in a standardized form, and presented to the other party on a "take-it-or-leave-it" basis with no opportunity for negotiations. *Reeves v. The Chem Indus. Co.*, 262 Or. 95, 101 (1972). Adhesion contracts are not generally unenforceable under

10 - OPINION AND ORDER

Oregon law merely because the parties have unequal bargaining power. Any ambiguities in such contracts, however, are construed strictly against the drafter. *Derenco v. Benjamin Franklin Fed. Sav. and Loan Ass'n*, 281 Or. 533, 552 (1978). *See also Welker ex. rel. Bradbury v. Teacher Standards and Practices Comm'n*, 152 Or. App. 190, 196 (1998), *vacated on other grounds*, 332 Or. 306 (2001).

Oregon courts construe arbitration agreements liberally in favor of arbitrability. *Seller v. Salem Women's Clinic, Inc.*, 154 Or. App. 522, 526, *rev. denied,* 328 Or. 40 (1998). The Oregon Arbitration Act, Or. Rev. Stat. § 36.300, *et seq.,* recognizes the validity of all written arbitration agreements unless they are revocable under an applicable contract defense. Or. Rev. Stat. § 36.305. Because adhesion contracts generally are valid contracts under Oregon law, an arbitration agreement contained in an adhesion contract is not, therefore, *per se* unreasonable or unenforceable. *See Sullivan v. Lenscrafters*, No. 02-CV-942-BR, Opin. and Order at 12 (issued Nov. 15, 2002) (Brown, J.). Moreover, both Oregon and federal law prohibit courts from adopting standards that are stricter for evaluating the validity and enforceability of arbitration agreements than for other contracts or contract provisions. *See* Or. Rev. Stat. § 36.305, 9 U.S.C. § 3. *See also Sullivan*, No. 02-CV-942-BR, Opin. and Order at 12. The Court, therefore, concludes Oregon

11 - OPINION AND ORDER

courts would not apply stricter standards to an arbitration provision in an adhesion contract than they would apply to other provisions in an adhesion contract.

Accordingly, the arbitration clause here is not unconscionable merely because T-Mobile presented it to Plaintiffs as a take-it-or-leave-it condition of entering into the Service Agreement.

**B.    The Preclusion of Class-Action Relief Does Not Make the Arbitration Clause Unconscionable.**

Plaintiffs contend the arbitration clause waiver of the right to bring a class action renders the arbitration clause unconscionable.  This precise issue has been addressed in this District and affirmed by the Ninth Circuit.  *See Horenstein v. Mortgage Mkt., Inc.*, 98-1104-AA, 1999 U.S. Lexis 22995, at *11 (D. Or. July 23, 1999)("absence of a right to proceed collectively does not render the arbitration provisions unenforceable."), *aff'd by* 9 Fed. App. 618 (9th Cir. 2001).  *See also Graziani v. Nouvellus Sys., Inc.*, No. Civ. 03-433-AS, 2003 WL 23977829, at *9 (D. Or. Sept. 16, 2003)(arbitration clause is not made unconscionable or unenforceable because it includes a ban on collective action).  The Court finds the reasoning in these cases is persuasive.  Accordingly, the Court concludes the Service Agreement provision prohibiting a class action does not render the arbitration clause unconscionable or unenforceable.

**C.    Plaintiffs Fail to Demonstrate the Arbitration Clause
Is Unconscionable Because It Allegedly Limits
Discovery.**

Although the arbitration clause itself does not contain
any limitations on discovery in arbitration, Plaintiffs contend
the "Consumer Rules and Fast Track Procedures of the WIA Rules
[are] likely applicable to Plaintiffs' claims [and] allow no
discovery."  Defendants did not respond to this contention.

"[T]he party asserting unconscionability must
demonstrate that the clause in question was unconscionable at the
time the contract was made." *W.L. May*, 273 Or. at 707.  The
arbitration clause here does not refer the parties to the
Consumer Rules and Fast Track Procedures of the WIA Rules nor
have Plaintiffs produced any evidence that these rules would
apply.

Accordingly, the Court concludes Plaintiffs have not
met their burden to established the arbitration clause is
unconscionable because it limits discovery.

**D.    Plaintiffs Fail to Demonstrate the Expense of
Arbitration Is Sufficiently Prohibitive to Render the
Arbitration Clause Unconscionable.**

Plaintiffs contend the arbitration clause requirements
are prohibitively expensive and render the arbitration agreement
unconscionable.

The arbitration clause provides:

AAA has a fee schedule for arbitrations.  You

13 - OPINION AND ORDER

> will pay your share of the arbitrator's fees
> except:  (a) for claims less than $25, we
> will pay all arbitrator's fees and (b) for
> claims between $25 and $1,000, you will pay
> $25 for the arbitrator's fee. . . .  Visit
> www.adr.org arbitrator fee information in
> hardship circumstances.

Plaintiffs allege in their Response to Defendants' Motion that
"Plaintiffs and each putative Class Member could be required to
pay at least $375 to $550 to arbitrate a claim might [*sic*] only
be valued at a few hundred dollars."

When "a party seeks to invalidate an arbitration
agreement on the ground that arbitration would be prohibitively
expensive, that party bears the burden of showing the likelihood
of incurring such costs." *Green Tree Fin. Corp.-Ala. v.
Randolph*, 531 U.S. 79, 92 (2000).  "It may well be that the
existence of large arbitration costs could preclude a litigant
. . . from effectively vindicating her federal statutory rights
in the arbitral forum." *Id*. at 91.  The record in this case,
however, contains little evidence regarding the costs associated
with arbitration.  Plaintiffs did not provide the Court with an
affidavit or any basis for their cost estimate of $375 to $550
per class member to arbitrate these claims.  Although the
arbitration clause delineates a fee of $25 to be paid by
Plaintiffs if their claim is between $25 and $1,000, it does not
provide any other fee information.  The AAA Wireless Industry
Arbitration Rules referenced in the arbitration clause provide a

schedule for arbitration fees, but the schedule is based on the amount sought in Plaintiffs' claims, the number of arbitrators involved, and other factors about which Plaintiffs have not provided the Court with any evidence.  The Court also notes the Rules indicate "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."  The parties, however, have not presented any evidence or information as to what might constitute an extreme hardship under these Rules or whether the circumstances here would qualify. Thus, Plaintiffs have failed to satisfy their burden to show the likelihood of incurring "burdensome" arbitration costs.

Accordingly, the Court concludes Plaintiffs have not shown the expense of arbitration is sufficiently prohibitive to render the arbitration clause unconscionable.

**E.    The Arbitration Clause Limits on Plaintiffs' Available Damages Is Unconscionable.**

Plaintiffs contend they would be entitled to attorneys' fees if they prevailed on their claims under Oregon's UTPA.  The arbitration clause, however, does not contain a provision for shifting attorneys' fees to Defendants if Plaintiffs prevail on their claims (*i.e.*, the clause requires the parties to pay their own attorneys' fees).  Plaintiffs argue the arbitration clause, therefore, is unconscionable.

An arbitration clause cannot "purport[] to forfeit certain important statutorily-mandated rights or benefits."

15 - OPINION AND ORDER

*Graham Oil v. Arco Prods. Co.*, 43 F.3d 1244, 1247 (9th Cir. 1994).  In *Graham Oil*, the Ninth Circuit declined to enforce an arbitration agreement under the Petroleum Marketing Practices Act because it denied the right of the prevailing party to obtain attorneys' fees, which is an important statutorily-mandated right.  *Id*. at 1249.

The Oregon UTPA provides for attorneys' fees to be awarded to a prevailing consumer.  Or. Rev. Stat. § 646.638(1) and (3).  The arbitration clause here, however, provides in pertinent part:

> You and we agree to pay our own other fees, costs and expenses including those for counsel, experts, and witnesses.  Visit www.adr.org arbitrator fee information in hardship circumstances.

The AAA Wireless Industry Arbitration Rules referenced in the arbitration clause provide:

> **R-41. Scope of Award**
> The arbitrator may grant any remedy or relief, including equitable relief, that the arbitrator deems just and equitable and that does not exceed the scope of the agreement of the parties.  The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Sections R-47, R-48, and R-49 in favor of any party and, in the event that any administrative fees or expenses are due the AAA, in favor of the AAA.
>
> * * *
>
> **R-48. Expenses**
> Each party shall bear the expense of its own counsel, experts, witnesses, and preparation

16 - OPINION AND ORDER

and presentation of proofs. All other
expenses of the arbitration, including
required travel and other expenses of the
arbitrator, AAA representatives, and the cost
of any proof produced at the direct request
of the arbitrator, may be the subject of an
award, and shall be borne equally by the
parties pending an award.

Thus, neither the arbitration clause nor the AAA Wireless

Industry Arbitration Rules provide for fee-shifting if Plaintiffs

are successful on their claims in arbitration.  The Court,

therefore, concludes the arbitration clause attempts to "forfeit

. . . important statutorily-mandated rights or benefits" by

failing to include a fee-shifting provision as provided under the

UTPA.  Accordingly, that part of the arbitration clause is

unconscionable.

**F.    The Entire Arbitration Clause Should Not Be Severed.**

Because the Court has determined the arbitration clause

provision regarding attorneys' fees is unconscionable, the Court

must decide whether to sever the entire arbitration clause from

the Service Agreement or only the provision pertaining to

attorneys' fees.

Generally in contract law a clause cannot be severed

from a contract when the contract is integrated.  As the Ninth

Circuit noted in a survey of contract law, a contract is

"integrated" (*i.e.*, it is "entire, and not severable[)] when, by

its terms, nature, and purpose, it contemplates and intends that

each and all of its parts, [and] material provisions . . . are

17 - OPINION AND ORDER

common to the other, and interdependent." *Hudson v. Wylie*, 242
F.2d 435, 446 (9th Cir. 1957).  The Oregon Supreme Court has held
the court must look to the language of the contract to determine
whether a contract is integrated.  *Care Med. Equip., Inc. v.
Baldwin*, 331 Or. 413, 418 (2000).

> The extent to which a contract is divisible
> and whether one promise may be severed from
> another depends on the intention of the
> parties, which we determine by interpreting
> the contract.  The court must interpret the
> wording of a contract to effectuate the
> intentions of the parties, as those
> intentions can be determined from that
> wording and other relevant circumstances.

*Id*.

Here the arbitration clause contains a severability
contingency that provides:

> IF A COURT OR ARBITRATOR DETERMINES THAT YOUR
> WAIVER OF YOUR ABILITY TO PURSUE CLASS OR
> REPRESENTATIVE CLAIMS IS UNENFORCEABLE, THE
> ARBITRATION AGREEMENT WILL NOT APPLY AND OUR
> DISPUTE WILL BE RESOLVED BY A COURT OF
> APPROPRIATE JURISDICTION, OTHER THAN A SMALL
> CLAIMS COURT.  SHOULD ANY OTHER PROVISION OF
> THIS ARBITRATION AGREEMENT BE DEEMED
> UNENFORCEABLE, THAT PROVISION SHALL BE
> REMOVED, AND THE AGREEMENT SHALL OTHERWISE
> REMAIN BINDING.

Thus, to effectuate the intentions of the parties as
they can be determined from the language of the arbitration
clause, the Court concludes only those provisions that require
each party to bear its own attorneys' fees and that prohibit fee-
shifting are unenforceable.  Accordingly, the Court severs those

18 - OPINION AND ORDER

provisions from the remainder of the arbitration clause and concludes Plaintiffs must arbitrate their claims against T-Mobile as otherwise provided in the Service Agreement.

**IV.  Plaintiffs Must Comply with the Provisions of the Service Agreement with Respect to Sony Ericsson.**

Plaintiffs also contend Sony is not a party to the Service Agreement and, therefore, Plaintiffs' claims against Sony are not subject to the arbitration clause.  Defendants, however, contend the Service Agreement and, therefore, the arbitration clause specifically extend to Sony.

The arbitration clause provides in pertinent part:

> This agreement to arbitrate extends to claims that you assert against other parties, including without limit equipment manufacturers and dealers, if you also assert claims against [T-Mobile] in the same proceeding.

Plaintiffs are asserting claims against T-Mobile.  Sony is a manufacturer of equipment for T-Mobile, and Plaintiffs' claims against Sony are predicated on the same legal theories and facts as the claims against T-Mobile.  Thus, Plaintiffs' claims against Sony and T-Mobile are intertwined and fall within the scope of the arbitration clause.  *See Cormer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)("nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles," including "1)incorporation by reference . . . and . . . 5) estoppel.").  Accordingly, the terms of the Service Agreement specifically extend the arbitration

19 - OPINION AND ORDER

requirements to Plaintiffs' claims against Sony.

The Court, therefore, concludes Plaintiffs also must arbitrate their claims against Sony.

**V.    Whether the Parties Breached the Service Agreement Is an Issue for the Arbitrator to Determine.**

Plaintiffs contend T-Mobile breached the arbitration clause of the Service Agreement because it did not respond to Plaintiffs' letter to T-Mobile customer service in which Plaintiffs attempted to begin negotiations as required under the arbitration clause.  Defendants, however, contend this issue is not properly before the Court because Plaintiffs did not send a letter to T-Mobile's registered agent.  According to Defendants, Plaintiffs, therefore, are in breach of the Service Agreement's arbitration clause.

After the Court has determined the applicability of the arbitration clause, the arbitrator decides substantive issues of compliance with the Service Agreement, including whether Plaintiffs properly commenced negotiations or whether Defendants failed in their duty to negotiate.  *See John Wiley and Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)("the parties are obligated to submit the subject matter of a dispute to arbitration, procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.").  *See also Industrial/Matrix Joint Venture v. Pope & Talbot, Inc.*, 200 Or. App. 248, 253 (2005)("[T]he arbitrator,

20 - OPINION AND ORDER

not the court, should decide whether the parties have met the contractual and statutory preconditions to arbitration."). Accordingly, the Court leaves this issue to the arbitrator.

**VI.  Dismissal of this Matter Pending Arbitration.**

If the Court compels arbitration, Defendants move to dismiss this matter pending arbitration.  Plaintiffs are silent as to whether the Court should dismiss or stay this matter pending arbitration.

Because arbitration is likely to resolve all of Plaintiffs' claims, the Court concludes it is appropriate to dismiss this matter without prejudice pending arbitration.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss or Stay Action and Compel Arbitration (#5) and **DISMISSES** this matter **without prejudice.**

IT IS SO ORDERED.

DATED this 7th day of September, 2006.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


21 - OPINION AND ORDER